Slip Op. 16-90

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PAKFOOD PUBLIC COMPANY LIMITED, OKEANOS FOOD COMPANY LIMITED, THAI UNION FROZEN PRODUCTS PUBLIC CO., LTD., THAI UNION SEAFOOD CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Leo M. Gordon, Judge <br><br> Court No. 14-00230 |

**OPINION and ORDER**

[Final administrative review results remanded.]

Dated: October 4, 2016

<u>Robert G. Gosselink</u>, Trade Pacific PLLC of Washington, DC for Plaintiffs Pakfood Public Co., Ltd., Okeanos Food Company Ltd., Thai Union Frozen Products Public Co., Ltd., and Thai Union Seafood Co., Ltd.

<u>Kara M. Westercamp</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC for Defendant United States. On the brief with her were <u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Patricia M. McCarthy</u>, Assistant Director. Of counsel on the brief was <u>Michael T. Gagain</u>, Attorney, Office of Associate Chief Counsel, U.S. Department of Commerce of Washington, DC.

<u>Jordan C. Kahn</u> and <u>Nathaniel M. Rickard</u>, Picard Kentz & Rowe, LLP of Washington, DC for Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee.

**Gordon, Judge:** This action involves the final results of an administrative review conducted by the U.S. Department of Commerce ("Commerce") for the antidumping duty order covering <u>Certain Frozen Warmwater Shrimp from Thailand</u>, 79 Fed. Reg. 51,306

(Dep't Commerce Aug. 28, 2014) ("Final Results"); see also Issues and Decision Mem. for Certain Frozen Warmwater Shrimp from Thailand, A-549-822 (Aug. 21, 2014, ECF No. 22 ("Decision Mem."). The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii)(2012),[1] and 28 U.S.C. § 1581 (c) (2012). Plaintiffs Pakfood Public Co. Ltd, and Okeanos Food Company Limited (collectively, "Pakfood") and Thai Union Frozen Products Public Co., Ltd. and Thai Union Seafood Co., Ltd. (collectively, "Thai Union") challenge Commerce's deviation from its standard 90/60-day window sales comparison periods provided in 19 C.F.R. § 351.414(f) (2013). For the reasons that follow, the court remands this matter to Commerce for further consideration.

## I. Background

During the administrative review Commerce selected Pakfood and Thai Union for individual review. Commerce collapsed them into a single entity ("Collapsed Entity") two and a half months into the review period, effective April 23, 2012 ("Collapsing Date"). Commerce calculated separate dumping margins for Pakfood and Thai Union before (and excluding) the Collapsing Date, as well as a separate margin for the Collapsed Entity after (and including) the Collapsing Date. In those calculations Commerce truncated—on the Collapsing Date—its normal 90/60-day sales comparison window under 19 C.F.R. § 351.414(f) in which it tries to match contemporaneous sales. Commerce compared Pakfood's U.S. sales to its home market sales made before the Collapsing

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

Date. Commerce also compared Thai Union's U.S. sales to its home market sales made before the Collapsing Date. Lastly, Commerce compared the Collapsed Entity's (Pakfood and Thai Union's) U.S. sales to home market sales made on or after the Collapsing Date.

## II. Standard of Review

For administrative reviews of antidumping duty orders, the court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d ed. 2016). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances

Court No. 14-00230                                                                                                                                            Page 4

presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2016).

### III. Discussion

When Commerce calculates a respondent's dumping margin, Commerce compares "the export price or constructed export price and normal value." 19 U.S.C. § 1677b(a). The respondent's "normal value" is generally based on home market sales, made in the ordinary course of trade "at a time reasonably corresponding to the time of the sale used to determine the export price or constructed export price." 19 U.S.C. § 1677b(a)(1)(A). Commerce normally determines the contemporaneous month for price-to-price comparisons using the 90/60-day window method set forth in 19 C.F.R. § 351.414(f):

> Normally, the Secretary will select as the contemporaneous month the first of the following months which applies:
>
> (1) The month during which the particular U.S. sales under consideration were made;
>
> (2) If there are no sales of the foreign like product during this month, the most recent of the three months prior to the month of the U.S. sales in which there was a sale of the foreign like product.
>
> (3) If there are no sales of the foreign like product during any of these months, the earlier of the two months following the month of the U.S. sales in which there was a sale of the foreign like product.

19 C.F.R. § 351.414(f).

All parties take this regulation at face value and do not discuss its genesis or purpose. The parties do, however, discuss the purpose of the collapsing regulation, with all agreeing that Commerce collapses entities to counteract or inhibit a potential for sales

and production manipulation among the collapsed entities. In the proceeding below Plaintiffs challenged Commerce's decision to use the Collapsing Date as a demarcation line across which no sales comparisons would be made. Plaintiffs argued that pre-collapsed sales (of Pakfood and, separately, Thai Union) should be compared with post-collapsed sales (of Pakfood and Thai Union, collectively) so that a pre-collapsed Pakfood sale might match with a post-collapsed Thai Union sale, or a pre-collapsed Thai Union sale might potentially match with a post-collapsed Pakfood sale. Commerce responded to Plaintiffs' challenge by explaining that failing to treat the pre- and post- collapsed entities separately for sales comparison purposes would "undermine the rationale behind the collapsing regulation at 19 C.F.R. 351.401(f), and potentially allow parties to engage in precisely the type of sales and production shifting and manipulation that the regulation is designed to prevent." Decision Mem. at 22.

Plaintiffs make a straightforward argument that this explanation is unreasonable: if one accepts that the purpose of the collapsing regulation is to inhibit manipulation of sales and production among parties, then once parties are collapsed, that should, in theory, eliminate any potential for sales and production manipulation among those parties. Plaintiffs, in essence, characterize Commerce's additional truncation of the windows comparison period—to tackle an imagined, lingering potential for sales and production manipulation that has already been cured by the collapsing determination—as mere surplusage that arbitrarily inflates margins. Defendant and Defendant-Intervenor both respond that a mid-review collapse of mandatory respondents is an unusual situation, and that Commerce's fine tuning of the sales comparison methodology to deal separately

with the pre- and post-collapsed entities was reasonable.

There is some logic and persuasiveness to Plaintiffs' argument. Collapsing is not a new concept or methodology, so the court has some skepticism that an otherwise normal affiliation relationship and uncontested collapsing determination is unique or abnormal. And given the purpose of the collapsing regulation to eliminate the potential for price and production manipulation, the court does wonder why collapsing Pakfood and Thai Union does not, in fact, eliminate that potential. Why does it linger <u>after</u> the entities have been collapsed? If the potential for manipulation does in fact remain, has Commerce not chosen the correct collapsing date? And what can the parties manipulate after they have been collapsed? Is it the affiliation relationship itself that Commerce is trying to influence or discourage? Is Commerce concerned that parties will potentially manipulate the date of affiliation, engineer their collapsing, to minimize dumping margins? If that is the concern, wouldn't the parties have to be collapsed for the <u>entire</u> review period to eliminate <u>that</u> potential?

Also, what is Commerce's practice for the windows comparison period when Commerce collapses entities for the first time for an entire period of review? Does Commerce make the same calculation adjustment that it made here—truncating the normal windows comparison period when the entities are first collapsed (at the start of the review period)? In other words, does Commerce always isolate the sales comparisons of the collapsed entity? If not, how does Commerce reconcile the differing approaches?

## IV. Conclusion

In accordance with the foregoing, it is hereby

**ORDERED** that this action is remanded to Commerce to reconsider its decision to truncate the windows comparison period for Plaintiffs; it is further

**ORDERED** that Commerce shall file its remand results on or before December 1, 2016; and it is further

**ORDERED** that, if applicable, the parties shall file a proposed scheduling order with word limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.

                /s/ Leo M. Gordon
                Judge Leo M. Gordon

Dated: October 4, 2016
   New York, New York